UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| THE BURLINGTON INSURANCE COMPANY | Plaintiff |
| v. | Civil Action No. 3:17-CV-00586-RGJ |
| GREENWOOD ROLLERDROME, INC. | Defendant |

\* \* \* \* \*

## AMENDED MEMORANDUM OPINION AND ORDER[1]

This matter comes before the Court on Plaintiff's Motion for Summary Judgment. [DE 26]. Briefing is complete. [DE 27; DE 28]. The Court issued a *sua sponte* order requesting additional briefing on the exercise of discretionary jurisdiction under the Declaratory Judgment Act. [DE 33]. The parties filed the requested briefs and responses. [DE 34; DE 35; DE 36; DE 37]. The matter is ripe. For the reasons below, the Court will exercise its discretionary jurisdiction to entertain this declaratory judgment, and **GRANT** Plaintiff's Motion for Summary Judgment [DE 26].

### I.     BACKGROUND

Greenwood Rollerdrome, Inc. ("Greenwood") operated a bingo hall in Louisville. [DE 1 at 1–2, ¶ 3]. Stephanie Walker ("Walker"), a Greenwood patron, filed suit in Jefferson County Circuit Court alleging that Greenwood negligently failed to install and maintain reasonable and necessary safety features in its parking lot (the "Kentucky suit"). [DE 15-3 at 167, ¶ 11]. According to the Complaint, Walker was in the bingo hall parking lot one evening when "an

---

[1] On September 30, 2019 the Court entered a Memorandum Opinion and Order [DE 41] and Judgment [DE 42]. The Memorandum Opinion and Order indicated that the case was dismissed without prejudice. The Amended Memorandum Opinion and Order reflects that this case is dismissed with prejudice. Otherwise, all aspects of the previous Memorandum Opinion and Order [DE 41] and Judgment [DE 42] are the same.

1

unidentified man approached her and shoved a firearm into her head, forcing her over into the passenger seat as he drove the car away from the parking lot [where he] proceeded to carjack, kidnap, sexually assault, and sodomize [her]." [DE 15-3 at 167, ¶¶ 8–9].

Greenwood held a Commercial General Liability insurance policy (the "Policy") from The Burlington Insurance Company ("TBIC") for the period at issue. [DE 1 at 2, ¶ 6]. Greenwood notified TBIC of the Kentucky suit and TBIC undertook Greenwood's defense under a reservation of rights. *Id.* at 3, ¶¶ 13–14. TBIC then brought this action, seeking a declaratory judgment that the Kentucky suit cannot support liability for TBIC under the Policy. *Id.* at 6, ¶ 24. TBIC moved for summary judgment. [DE 26].

TBIC argues that it need not defend Greenwood under Coverage A ("Bodily Injury") and Coverage B ("Personal and Advertising Injury") because the Policy contained an "Exclusion for Assault, Battery or Other Physical Altercation" (the "Assault and Battery Exclusion"), which precludes liability on TBIC's part. [DE 26-1 at 201–11]. Greenwood, conversely, argues that the Policy covers at least some claims in the Kentucky suit. Greenwood asserts that coverage should not be denied even if the Assault and Battery Exclusion applies, under the doctrines of reasonable expectations and illusory coverage. [DE 27 at 218–22].

Before addressing TBIC's summary judgment motion, the Court must determine whether to exercise jurisdiction under the Declaratory Judgment Act. TBIC moves the Court to retain jurisdiction. [DE 34 at 250]. Greenwood moves the Court to reject it. [DE 35 at 255].

## II.  DECLARATORY JUDGMENT ACT

Under the Declaratory Judgment Act, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a).[2] While the

---

[2] The Act does not provide an independent basis for subject matter jurisdiction. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-87 (1995); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). Thus, an

2

Act authorizes district courts to exercise jurisdiction, it does not mandate or impose a duty to do so. *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 812 (6th Cir. 2004). The Act confers on the "federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).

This court considers five factors (the "*Grand Trunk* factors") to determine whether the exercise of Declaratory Judgment Act jurisdiction is appropriate. *Grand Trunk W.R.R. Co. v. Consol. Rail Co.*, 746 F.2d 323, 326 (6th Cir. 1984) (internal quotation marks omitted). The Court must balance the five factors and "[t]he relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on facts of the case." *Id.* at 563; *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014).

1. **Whether the declaratory action would settle the controversy and clarify the legal relations.**

The first two *Grand Trunk* factors assess "(1) whether the declaratory action would settle the controversy" and "(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue." *Grand Trunk*, 746 F.2d at 326. Because "it is almost always the case that if a declaratory judgment will settle the controversy, . . . it will clarify the legal relations in issue," the inquiries required by these two factors often overlap substantially. *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 397 (6th Cir. 2019) (citing *Flowers*, 513 F.3d at 557; *Bituminous*, 373 F.3d at 814; and *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003)).

There are two lines of cases in the Sixth Circuit. *Cole's Place, Inc.,* 2018 WL 1914731 at *4 (citing *Flowers*, 513 F. 3d at 555). "One line of cases approved of declaratory actions because

---

action brought under the Declaratory Judgment Act must invoke an independent basis for federal jurisdiction. Here, the independent basis for subject matter jurisdiction is diversity.

3

they can 'settle the insurance coverage controversy,' while a second line of cases disapproved of declaratory actions because while they 'might clarify the legal relationship between the insurer and the insured, they do not settle the ultimate controversy.'" *Id.* (quoting *Flowers*, 513 F.3d at 555).

The parties agree this matter falls into the first line of cases [DE 34 at 4; DE 35 at 2], that is, "a technical or legal issue is [ ] at the heart of the coverage controversy, and to the extent the facts of the underlying case matter, they are undisputed." *Emplrs. Ins. Co.*, 2011 WL 2119360, at *6. It is undisputed that the plaintiff in the Kentucky suit was assaulted in the bingo hall parking lot. It is also undisputed that whether assault occurred is not before the state court. Rather, the plaintiff in the Kentucky suit has sued Greenwood for alleged failure to install and maintain reasonable and necessary safety features. Thus, the issue there is whether Greenwood negligently failed to protect the patron plaintiffs, not (as in the present suit), whether some claims in the Kentucky suit arose out of a "carjacking and kidnapping." [DE 15-3 at 167, ¶ 9].

In this action, liability is established under the Personal and Advertising Injury Coverage portion of the Policy because kidnapping is a type of detention. This issue is not present in the Kentucky suit, but only here between the insured and insurer. As a result, this declaratory judgment action will "settle the controversy," as it resolves the dispute between the insurer and insured over who will pay for the state-court litigation. *See, e.g., W. World Ins. Co. v. Hoey*, 773 F.3d 755, 760–61 (6th Cir. 2014). The first two factors therefore support jurisdiction.

**2. Whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for res judicata.**

The third factor considers "whether the use of the declaratory judgment action is motivated by 'procedural fencing' or [is] likely to create a race for res judicata." *Flowers*, 513 F.3d at 558. The Sixth Circuit seldom finds procedural fencing if the declaratory-plaintiff filed after the start

of litigation in state court. *Cole's Place*, 936 F.3d at 399. The Kentucky suit was filed on August 17, 2017. [DE 15-3]. This action was filed on September 25, 2017. [DE 1]. "[W]hen the plaintiff has filed his claim after the state court litigation has begun, [the Sixth Circuit] ha[s] generally given the plaintiff 'the benefit of the doubt that no improper motive fueled the filing of [the] action.'" *Id.* (fourth alteration in original) (quoting *Bituminous*, 373 F.3d at 814). This factor supports jurisdiction.

> 3. **Whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction.**

The fourth *Grand Trunk* factor addresses "whether accepting jurisdiction would increase friction between federal and state courts" and is broken into three sub-factors. *Flowers*, 513 F.3d at 559.

The first sub-part "focuses on whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." *Flowers*, 513 F.3d at 560. As discussed above, any factual determinations the Court may have to make about the Policy's Assault and Battery Exclusion will not overlap with those at issue in the Kentucky suit. The first sub-factor therefore supports jurisdiction.

> a. <u>Whether the State Trial Court is in a Better Position to Evaluate Those Factual Issues than is the Federal Court.</u>

The second sub-part examines "which court, federal or state, is in a better position to resolve the issues in the declaratory action." *Id.* The Sixth Circuit has "found that 'issues of insurance contract interpretation are questions of state law with which the Kentucky state courts are more familiar and, therefore, better able to resolve.'" *Id.* (quoting *Travelers Indemnity Co. v Bowling Green Prof. Assoc.*, 495 F.3d 266, 273 (6th Cir. 2007)). The questions that would arise

here do not, however, do not involve novel issues of Kentucky law. *See Cole's Place,* 2018 WL 1914731, at *8.

Determining whether TBIC has an obligation to Greenwood under the Policy requires addressing whether a violent kidnapping by a third-party qualifies as a "[f]alse arrest, detention or imprisonment" under the Personal and Advertising Injury Coverage clause; and, if so, whether the illusory coverage doctrine prevents applying the exclusion. While it appears no Kentucky court has addressed the illusory coverage doctrine for an assault and battery exclusion, the Kentucky Court of Appeals has addressed this doctrine in the context of exclusions in general. *See Ritchie v. Turner*, 547 S.W.3d 145, 149 (Ky. App. 2018). Thus, the Federal Court can apply the doctrine of illusory coverage to the undisputed factual situation and Policy here. The second sub-factor therefore is neutral and does not weigh heavily in the balance. *Cole's Place*, 936 F.3d at 401.

        b. <u>Whether There is a Close Nexus Between Underlying Factual and Legal Issues and State Law and/or Public Policy, or Whether Federal Common or Statutory Law Dictates a Resolution of the Declaratory-Judgment Action.</u>

The third sub-part "focuses on whether the issue in this federal action implicates important state policies and is, thus, more appropriately considered in state court." *Flowers*, 513 F.3d at 561. Kentucky state courts are "more familiar and, therefore, better able to resolve" interpretation of insurance contracts. *Id*. Even when the state law is not difficult to apply, the Sixth Circuit has usually found "that the interpretation of insurance contracts is closely entwined with state public policy." *Cole's Place*, 936 F.3d at 400 (citing *e.g.*, *Flowers*, 513 F.3d at 561 and *Travelers*, 495 F.3d at 273). Because this action involves an interpretation of a Kentucky insurance contract, the third sub-factor counsels against jurisdiction.

**4.    Whether there is an alternative remedy which is better or more effective.**

The fifth and final factor asks "whether there is an alternative remedy which is better or more effective" than federal declaratory relief. *Grand Trunk*, 746 F.2d at 326. Kentucky law provides a declaration of rights procedure, under KRS § 418.040. *Mass. Bay Ins. Co. v. Christian Funeral Dirs., Inc.*, No. 18-5267, 2018 WL 6787945, at *8 (6th Cir. Dec. 26, 2018). The Sixth Circuit has held that, "[i]n many ways, this alternative would have been better." *Flowers*, 513 F.3d at 562. Specifically,"[t]he Kentucky courts are in a superior position to resolve undecided questions of state law," and "Kentucky courts might also have been able to combine the two actions so that all issues could be resolved by the same judge." *Id.*

On the other hand, "given that Kentucky precedent provides clear guidance as to the resolution of the legal issue presented, it cannot be said that the district court [is] a clearly inferior forum to resolve the issue" in this case. *Id.* This is because TBIC would have needed to join the underlying state action and then wait until a resolution of liability before determining its obligations toward Greenwood. "Such a delayed alternative would be worse, not better, than seeking a federal declaratory judgment." *Id.* When faced with the same conflicting alternative remedies in *Flowers*, the Sixth Circuit held that this factor "counsel[s] against exercising jurisdiction . . . [h]owever, it does not counsel so strongly against exercising jurisdiction that" exercising jurisdiction would constitute an "abuse[ ] [of] discretion." *Id.* at 562–63. For these reasons, overall, the fifth *Grand Trunk* factor weighs against exercising jurisdiction.

**5.     Balancing the Grand Trunk factors.**

As noted above, the Sixth Circuit has never suggested the relative weight of the factors; instead, "[t]he relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on facts of the case." *Cole's Place*, 936 F.3d at 396 (citing *Hoey*, 773 F.3d at 759). Further,"[t]he essential question is always whether [the court] has taken a good look at

7

the issue and engaged in a reasoned analysis of whether issuing a declaration would be useful and fair." *Id*. (citing *Hoey,* 773 F.3d at 759)(citation omitted). Having evaluated those factors, the first two factors support exercising jurisdiction, as does one of the sub-factors of the third factor. Because of the importance of these factors and the well-established law on these legal issues, the exercise of the Court's discretionary jurisdiction is appropriate.

### III. SUMMARY JUDGMENT

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of specifying the basis for its motion and showing the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the nonmoving party must produce specific facts showing a material issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Factual differences are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion. *Id.* at 252.

The Court must view the evidence and draw all reasonable inferences in a light most favorable to the nonmoving party. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). But the nonmoving party must do more than show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" *Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014). "The mere existence of a scintilla of evidence in support of the [nonmoving

party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Liberty Lobby*, 477 U.S. at 252.

In duty-to-defend cases, "a court should determine at the outset of litigation whether an insurance company has a duty to defend its insured by comparing the *allegations in the underlying complaint* with the terms of the insurance policy." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 507 (6th Cir. 2003) (applying Kentucky law) (emphasis added). The interpretation of an insurance contract is a matter of law. *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 507 (6th Cir. 2003) (citing *Stone v. Ky. Farm Bureau Mut. Ins. Co.*, 34 S.W.3d 809, 810 (Ky. App. 2000)). "To ascertain the construction of an insurance contract, one begins with the text of the policy itself." *Pryor v. Colony Ins.*, 414 S.W.3d 424, 430 (Ky. App. 2013). "The words employed in insurance policies, if clear and unambiguous, should be given their plain and ordinary meaning." *Nationwide Mut. Ins. Co. v. Nolan*, 10 S.W.3d 129, 131 (Ky. 1999). "[T]he terms should be interpreted in light of the usage and understanding of the average person." *Stone*, 34 S.W.3d at 811 (citing *Fryman v. Pilot Life Ins. Co.*, 704 S.W.2d 205 (Ky. 1986)).

TBIC argues that the injuries suffered by the plaintiff in the Kentucky suit arose from an assault, battery or other physical altercation, and that the Assault and Battery Exclusion therefore precludes TBIC's liability under both Coverage A ("Bodily Injury") and Coverage B ("Personal and Advertising Injury"). [DE 26-1 at 201–11; DE 28 at 228]. The Assault and Battery Exclusion includes identical exclusions for Coverage A and B and reads:

> EXCLUSION – ASSAULT, BATTERY OR OTHER PHYSICAL ALTERCATION
>
> D.  This insurance does not apply to:
> a.  Assault, Battery Or Other Physical Altercation
>
> "Bodily injury" or "property damage"
> . . .

E. This insurance does not apply to:
z. Assault, Battery Or Other Physical Altercation
"Personal and advertising injury":
(1)     Expected or intended from the standpoint of any insured.
(2)     Arising in whole or in part out of any "assault" or "battery" committed or attempted by any person.
(3)     Arising in whole or in part out of any act or omission in connection with avoiding, preventing, suppressing or halting any actual or threatened "assault" or "battery."
(4)     Arising in whole or in part out of any actual or threatened verbal or physical confrontation or altercation committed or act or omission in connection with avoiding, preventing, suppressing or halting any actual or threatened verbal or physical confrontation or altercation.
. . .
H. The following are added to the Definitions Section of this policy:

"Assault" means any attempt or threat to inflict injury upon the person of another, or any display of force such as would give a person reason to fear or expect immediate bodily harm.
"Battery" means physical contact with a person without his or her consent that entails some injury or offensive touching.

G. The exclusions added in paragraphs D, E and F of this endorsement apply to all *acts or omissions*, including any act or omission in responding to or failing to respond or render aid, medical or otherwise, to any victim of the "assault" or "battery" or physical confrontation or altercation, and *all theories of liability* (direct or vicarious) asserted against any insured, *including* but not limited to all theories of *negligence, gross negligence*, recklessness or intentional tort and shall not be subject to any severability or separation of insureds provision in the policy.

[DE 28-3 at 238] (emphasis added).

Greenwood argues that because some claims in the Kentucky suit arose out of a "carjacking and kidnapping," [DE 15-3 at 167], liability is established under Coverage B ("Personal and Advertising Injury") as kidnapping is a type of detention. [DE 27 at 218–19]. Greenwood further argues that coverage should not be denied even if the exclusion applies, under the doctrines of reasonable expectations and illusory coverage. *Id.* at 219-222.

1. **The Assault and Battery Exclusion applies and TBIC need not defend or indemnify Greenwood under Coverage A ("Bodily Injury").**

Coverage A insures Greenwood against claims for "bodily injury." Walker, who was sexually assaulted, suffered a "bodily injury." Coverage A applies to Walker's claims. But so does the Assault and Battery Exclusion. Because Walker's "bodily injury" arose "in whole or in part" out of an "assault" and "battery," as those terms are defined in the Assault and Battery Exclusion, TBIC is not required to defend or indemnify Greenwood. Shoving a firearm in Walker's face was an "assault," as that term is defined in the policy because it was a "display of force such as would give a person reason to fear or expect immediate bodily harm." [DE 28-3 at 238]. Likewise, carjacking, kidnapping, sexually assaulting, and sodomizing all qualify as a "battery," as that term is defined in the policy because they were all "physical contact with a person without . . . her . . . consent that entails some injury or offensive touching." *Id.* Because Walker was assaulted and battered by her assailant, the Assault and Battery Exclusion applies.

Paragraph G provides that the Assault and Battery Exclusion applies to "acts or omissions" asserted against Greenwood, "including any act or omission in responding to or failing to respond or render aid, medical or otherwise, to any victim of the 'assault' or 'battery' or physical confrontation or altercation, and all theories of liability . . . including . . . theories of negligence, gross negligence." The Kentucky suit alleges that Walker was victimized because Greenwood "fail[ed] to install and maintain necessary safety features and implement policies to protect customers." [DE 15-3 at 167]. It further alleges that "fail[ing] to install and maintain necessary safety features" is a negligent or grossly negligent omission.

Although cited by neither party, *Doe v. Colony Ins. Co.*, 399 F. App'x 966 (5th Cir. 2010) is on point. There, Jane Doe was pumping gas when she was kidnapped, carjacked, and sexually assaulted. *Id.* at 967. She sued the owners of the gas station for negligence and premises liability claims. *Id.* The owners had a commercial general liability policy. *Id.* The insurance company

11

filed a declaratory judgment action and moved for summary judgment, arguing that the "Assault and Battery Exclusion in the Policy barred all of the claims and damages." *Id.* The insurance policy covered "bodily injuries occurring at [the gas station]. It exclude[d] from coverage . . . damages or expenses due to bodily injury . . . arising out of or resulting from: (1) Assault and Battery committed by any person; (2) The failure to suppress or prevent assault and battery by any person; (3) The failure to provide an environment safe from assault and battery or failure to warn of the dangers of the environment which could contribute to assault and battery." *Id.* at 967–68 (internal quotation marks omitted). The district court granted summary judgment because Doe's injuries "arose out of" the assault and battery. *Id.* at. 968. The Fifth Circuit affirmed. *Id.*

Here, the Policy and the facts are strikingly similar to *Doe*. Coverage A of the present policy covers "bodily injury," like the policy in *Doe*, and both policies include an exclusion for assault and battery. And, like *Doe*, the bodily injury here arose from an assault and battery during a kidnapping. Thus, as in *Doe*, the claims in the Kentucky suit fall under the Assault and Battery Exclusion to Coverage A and TBIC is not required to defend or indemnify Greenwood.

> **2. The Assault and Battery Exclusion applies and TBIC need not defend or indemnify Greenwood under Coverage B ("Personal and advertising injury").**

Greenwood asserts that because some claims in the Kentucky Suit arose out of a "carjacking and kidnapping," [DE 15-3 at 167], liability is established under Coverage B as kidnapping is a type of detention. [DE 27 at 218–19]. Greenwood cites Coverage B which reads, in part:

COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

a. We will pay those sums that the insured becomes *legally obligated to pay* as damages because of "personal and advertising injury" to which the insurance applies. *We will have the right and duty to defend the insured against any "suit" seeking those damages*. (the "Personal and Advertising Injury Coverage").
[DE 15-2 at 146] (emphasis added).

And the definitions section of the policy reads, in part:

> 14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of *one or more of the following offenses*:
>     a. False arrest, *detention* or imprisonment;
>     b. Malicious prosecution;
>     c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
>     d. *Oral* or written publication, *in any manner*, *of material that slanders or libels a person* or organization, but does not include slander or libel that disparages a person's or organization's goods, products or services; or
>     e. Oral or written publication, in any manner, of material that violates a person's right of privacy.
>     f. The use of another's advertising idea in your "advertisement";
>     g. Infringing upon another's copyright, trade dress or slogan in your "advertisement"

*Id.* at 127 (emphasis added).

Coverage B insures Greenwood for "personal injury" arising out of "detention." The Policy does not define "detention." Greenwood asserts that the Merriam-Webster definition of "kidnapping," includes the word "detain." [DE 27 at 218–19]. It does. But, under Greenwood's proffered definition, kidnapping also includes "seiz[ing] and "unlawful force," both of which, at the very least, satisfy the definition of "battery" ("offensive touching") as defined in the Assault and Battery exclusion. *Id.* at 218. Hence, according to Greenwood's own definition, kidnapping involves detention and "battery," and because it involves "battery" it falls under the Assault and Battery Exclusion.

*Doe* is again instructive. There, Jane Doe unsuccessfully argued that the kidnapping was a "separate event" from the sexual assault, one "accomplished solely by inveiglement and unaccompanied by force," so that it did not arise or result from assault and battery and did not fall under that exclusion. *Doe,* 399 F. App'x at. 968. Greenwood makes a similar argument, one that attempts to separate the non-violent aspects of kidnapping (*i.e.*, detention) from the violent ones

13

in effort to avoid the exclusion. But, as in *Doe*, the kidnapping here "arose" from assault and battery and the policy excludes coverage for claims "*[a]rising* in whole or in part *out of* any 'assault' or battery' . . ." [DE 28-3 at 238 (emphasis added)], thus it is irrelevant that, semantically speaking, kidnapping contains a "detention" element.

Greenwood's final argument is that TBIC is nonetheless required to defend it against the Kentucky suit under the doctrines of reasonable expectations and illusory coverage.

   a. The Doctrine of Reasonable Expectations is Inapplicable.

"The rule of interpretation known as the 'reasonable expectations doctrine' resolves an insurance policy ambiguity in favor of the insured's reasonable expectations." *Kentucky Employers' Mut. Ins. v. Ellington*, 459 S.W.3d 876, 883 (Ky. 2015) (quoting *Aetna Cas. & Sur. Co. v. Commonwealth*, 179 S.W.3d 830, 837 (Ky. 2005). The basic thrust of this doctrine is "that the insured is entitled to all the coverage he may reasonably expect to be provided under the policy." *Id.* (quoting *Simon v. Continental Ins. Co.*, 724 S.W.2d 210, 212 (Ky. 1986)). "Only an unequivocally conspicuous, plain and clear manifestation of the company's intent to exclude coverage will defeat that expectation." *Id.* (quoting *Simon*, 724 S.W.2d at 212). "This test looks to the reasonableness of what an insured may believe about coverage, and necessarily relies heavily on the facts." *Id.* But reasonable expectations are "not ascertained from the subjective belief, however genuine, of the insurance applicant"; rather, the "test in determining reasonable expectations is based on construing the policy language as a layman would understand it." *Sparks v. Trustguard Ins. Co.*, 389 S.W.3d 121, 128 (Ky. App. 2012). "Only actual ambiguities in the policy language will trigger the doctrine of reasonable expectations." *Id.* citing *True v. Raines*, 99 S.W.3d 439, 443 (Ky. 2003).

Here, Greenwood points to no specific language that is ambiguous and the Court finds no basis to conclude that Coverage B. The reasonable expectations doctrine is therefore inapplicable. As noted above, kidnapping involves detention and "battery," and because it involves "battery" it falls under the Assault and Battery Exclusion. Greenwood's expectation of coverage in this scenario is unreasonable when the Assault and Battery Exclusion indicates a "conspicuous, plain, and clear intent to exclude coverage" for detention "[a]rising in whole or in part out of any 'assault' or 'battery' committed or attempted by *any person*." *Simon*, 724 S.W.2d at 212; [DE 28-3 at 238] (emphasis added).

### b. The Doctrine of Illusory Coverage is Inapplicable.

"The doctrine of illusory coverage, like the doctrine of reasonable expectations, operates to qualify the general rule that courts will enforce an insurance contract as written." *Sparks*, 389 S.W.3d at 129. "[T]he doctrine of illusory coverage is best applied . . . where part of the premium is specifically allocated to a particular type or period of coverage and that coverage turns out to be functionally nonexistent." *Id.* (quoting *Jostens, Inc. v. Northfield Ins. Co.*, 527 N.W.2d 116, 119 (Minn. App. 1995)).

Greenwood cites *Ritchie v. Turner*, 547 S.W.3d 145, 149 (Ky. App. 2018), review denied (Oct. 25, 2018), which examined whether an insurance contract covered claims arising out of a teacher's sexual relationship with a student. The *Ritchie* court found there was no coverage. That court noted that even though the teacher's actions were excluded from coverage, the policy was not illusory because the administrative officials who were negligent in allowing the relationship to occur were not excluded from coverage. *Id.* The Policy here, like the one in *Ritchie*, is not illusory. For instance, under the Policy, Greenwood would have coverage if one its employees accidently locked a patron in a closet or a bathroom, thereby falsely imprisoning them. Or if an employee

15

detained a patron, without use of force, on the innocently held (but incorrect) suspicion that the patron had stolen something from Greenwood. These are "foreseeable" scenarios that would be covered under the Policy. *Gower v. Alfa Vision Ins. Corp.*, No. 2015-CA-000804-MR, 2016 WL 6819754, at *3 (Ky. App. Nov. 18, 2016) ("Coverage is illusory when an insured cannot foresee any circumstances under which he or she would collect under a particular policy provision") (citing *Sparks*, 389 S.W.3d at 128–129).

## IV. CONCLUSION

Having thus considered the parties' filings and the applicable law, and being otherwise sufficiently advised, the Court **HEREBY ORDERS AS FOLLOWS**:

(1) The Court finds that the exercise of its jurisdiction over this declaratory judgment action pursuant to 28 U.S.C § 2201 is proper.

(2) The Burlington Insurance Company's Motion for Summary Judgment, [DE 26], is **GRANTED**.

(3) The Burlington Insurance Company has no liability to Greenwood Rollerdrome, Inc., for the claims alleged in the *Walker* action.

(4) This matter is **DISMISSED** with prejudice and **STRICKEN** from the Court's active docket.

(5) The Court will enter a separate Judgment.